# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM ASH,** : | |
| : | |
| **Plaintiff** : | |
| : | **CIVIL ACTION NO. 3:18-CV-0325** |
| **v.** : | |
| : | **(Judge Caputo)** |
| **WARDEN ROBERT KARNES**, *et al.,* : | |
| : | |
| **Defendants** : | |

# M E M O R A N D U M

This matter comes before the Court on Plaintiff's Motion for Appointment of Counsel. (ECF No. 22.) For the following reasons, the motion will be denied without prejudice.

## I.   Procedural History & Background

William Ash initiated this action based on an incident that occurred while housed at the Lebanon County Correctional Facility (LCCP).[1] (ECF No. 1.) On March 30, 2016, upon his arrival at the LCCP's medical unit, Mr. Ash encountered CO Slather and the two exchanged words.[2] Consequently CO Slather ordered Mr. Ash placed in the Restricted Housing Unit (RHU). CO Fierro and CO Smith arrived at the medical unit to escort Mr. Ash to the RHU. While in route to the RHU, CO Smith threw Plaintiff against

---

[1] Mr. Ash is presently incarcerated at the Waymart State Correctional Institution in Waymart, Pennsylvania.

[2] Mr. Ash identifies a CO Slaughter in the caption of his Complaint but refers to a CO Slather in the factual section of his Complaint. Thus far the Court has been unable to serve CO Slaughter. Plaintiff will be directed to provide the correct name and address of this Defendant for the purpose of service.

the gymnasium window. CO Fierro broke Mr. Ash's left arm and chipped his elbow while attempting to handcuff him. Mr. Ash wore a cast for four weeks and underwent physical therapy for his injuries. On June 2, 2015, Mr. Ash was transferred to SCI-Dallas. (ECF No. 1.)

Following the resolution of the Defendants' motion to dismiss, CO Fierro and CO Smith filed an Answer to the Complaint. (ECF No. 19.) The Court then issued a Scheduling Order calling for the completion of discovery by July 30, 2019, and the submission of dispositive motions by August 30, 2019. (ECF No. 20.)

On May 13, 2019, Mr. Ash filed a motion for appointment of counsel based on his indigent status and lack of legal training. He claims the issues in the case are complex and that he suffers from a mental disability, ADD and ADHD. (ECF No. 22.) He argues that "this case will require considerable discovery concerning the identity of witness[es] the officers reports and statements about the incident any prior history of misuse [and] Plaintiff's medical history." (*Id.*) He adds that the complex "discovery rules put[ ] him at a disadvantage in countering the defendants' discovery tactics." (*Id.*) He claims "the large number of defendants some are supervisory officers" also make the case more complex requiring the appointment of counsel. Finally, Mr. Ash states he has not received any responses to his "numerous" requests to attorneys for representation. (*Id.*)

II.    Discussion

Indigent litigants bringing civil suits under 42 U.S.C. § 1983 have neither a constitutional nor statutory right to appointment of counsel. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). Yet, a court may ask counsel to represent an indigent litigant under 28 U.S.C. § 1915(e)(1).

The decision to request counsel to represent an indigent litigant under Section 1915 is within "the sound discretion of the trial court." *Tabron*, 6 F.3d at 153. "[C]ourts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997).

The initial determination to be made by the court in evaluating the expenditure of the "precious commodity" of volunteer counsel is whether the plaintiff's case "has some arguable merit in fact *and* law." *Montgomery*, 294 F.3d at 499 (emphasis added). If plaintiff's claims should overcome this threshold requirement, other factors to be examined are: (1) the plaintiff's ability to present his case; (2) the difficulty of the legal issues; (3) the degree to which factual investigation will be necessary and the plaintiff's ability to pursue it; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require expert testimony and (6) the plaintiff's ability to retain counsel on his own. *Parham,* 126 F.3d at 457 (citing *Tabron*, 6 F.3d at 155 - 56, 157 n. 5).

Following the resolution of Defendants' motion to dismiss, only Mr. Ash's Eighth Amendment excessive use of force claim remains against three individuals: CO Fierro; CO Smith and CO Slaughter. Based upon the allegations of the Complaint, the Court finds this claim has plausible merit in fact and law. Thus, the Court moves forward with analyzing the *Tabron* factors. The first *Tabron* factor, "perhaps the most significant [,]" is Plaintiff's ability to present his own case. In evaluating this first factor, courts should consider "the plaintiff's education, literacy, prior work experience, and prior litigation experience … plaintiff's ability to understand English … or, if the plaintiff is a prisoner, the restraints placed upon him or her by confinement." *Tabron*, 6 F.3d at 156. Clearly

Mr. Ash has access to this Court as demonstrated by his filings in this and other lawsuits. Mr. Ash is literate and can comprehend and communicate in English despite his ADD and ADHD issues. His documents are clear and legible. When necessary Plaintiff's filings contain pertinent legal citations. Moreover, Mr. Ash does not present any argument as how his ADD or ADHD conditions prevent him from advancing his case. In the event, if Mr. Ash should need additional time to comply with a briefing or other requirement, he need only request an enlargement of time from the Court. As a *pro se* litigant, Plaintiff will have the benefit of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) and its progeny, which provide that that courts must liberally construe *pro se* pleadings. Accordingly, this factor does not weigh in favor of appointing counsel.

The second *Tabron* factor considers the complexity of the legal issues presented in Plaintiff's case. The claims as well as the number of defendants involved is narrower than when Mr. Ash commenced this action. Now only a single Eighth Amendment claim against three LCCF staff members remains: whether Defendants used excessive force against him during the March 30, 2016-transfer to the RHU. Mr. Ash's failure to provide the Court with any explanation as to why he believes the remaining claims are "complex" to the point of necessitating the appointment of *pro bono* counsel does not allow for proper analysis of Mr. Ash's need for counsel on this factor. For these reasons, this factor weighs against appointment of counsel.

Third, there is no indication that Mr. Ash lacks the ability to conduct a factual investigation of his claims without the assistance of counsel. While Plaintiff feels "at a disadvantage in countering the defendant[s'] discovery tactics," (ECF No. 22) he does not suggest what, if any, "tactics" he has encountered that either frustrate his ability to

conduct discovery or demonstrates Defendants' abusive discovery tactics. Nonetheless, if Mr. Ash should encounter what he perceives to be inappropriate discovery roadblocks or actions by Defendants, he should seek this Court's intervention either by way of a motion to compel or a renewed motion for counsel. Additionally, Plaintiff fails to argue that he does not have access to the discovery tools provided by the Federal Rules of Civil Procedure to investigate his claims as well as any defenses. *See* Fed. R. Civ. P. 26. Although incarcerated, he is free to serve written requests for interrogatories, document requests, and requests for admissions like other *pro se* litigants. Thus, this *Tabron* factor also weighs against appointment of counsel.

The fourth factor - the extent to which the case is likely to turn on credibility determinations. Cases where adjudication relies solely on credibility determinations favor the appointment of counsel. *Lasko v. Watts*, 373 F. App'x 196, 201 (3d Cir. 2010). Regarding the credibility determination factor, "[w]hile the case ultimately may [ rely] upon credibility, it is difficult to imagine a case that does not. Thus, when considering this factor courts should determine whether the case [is] solely a swearing contest." *Parham*, 126 F.3d at 460. Here, Mr. Ash alleges the remaining three Defendants used excessive force against him while transporting him to the RHU. Thus, the question presented by Plaintiff is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). Factors to be considered when evaluating an excessive force claim are: (1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the injury; (4) the extent of the threat to safety "as reasonably perceived by responsible officials," and (5) "any efforts made to temper the severity of a forceful response."

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)). An "Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries". *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002). Based on the claim asserted by Mr. Ash, the resolution of this case may well depend on nothing more than whom the fact finder believes. The development of such a swearing contest would support the appointment of counsel.

Fifth, the Court considers whether the case will require expert testimony. At this stage of the proceedings, the need for expert testimony is not apparent. Thus, this factor weighs against the appointing counsel.

Sixth, the Court is required to analyze whether Plaintiff is able to retain and afford counsel. *See Tabron*, 6 F.3d at 156. Plaintiff is proceeding *in forma* pauperis and there is no indication that he can afford counsel. As to his ability to obtain counsel, he states, without any supportive evidence, that he has not received responses to his letters requesting representation. Consequently, taking Mr. Ash's statements at face value, this factor weighs in favor of appointing counsel.

After consideration of the aforementioned factors, the majority of the *Tabron* factors do not support the appointment of *pro bono* counsel. Therefore, the Court will deny Mr. Ash's request for counsel without prejudice.

An appropriate order follows.

**Date: June 19, 2019**    /s/ A. Richard Caputo
                                                **A. RICHARD CAPUTO**
                                                **United States District Judge**