IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM ASH,                                   :
      Plaintiff,                             :
                                     :     Civil Action No. 3:18-CV-0325
      v.                                       :
                                       :     The Honorable John E. Jones, III
WARDEN ROBERT KARNES, *et al.*,                :
      Defendants.                            :

## MEMORANDUM

### OCTOBER 26, 2020

In 2018, William Ash ("Ash"), a self-represented individual formerly housed

at the Lebanon County Correctional Facility ("LCCF") in Lebanon, Pennsylvania,

filed this civil rights action pursuant to 42 U.S.C. § 1983 suing Corrections

Officers ("CO") Stan Smith and CO Timothy Fierro.  (Doc. 1).  The Complaint

asserted a 42 U.S.C. § 1983 claim for excessive force and state law claims of

assault and battery.[1]  All other Defendants and claims have been dismissed.  (Doc.

18).  Presently pending before the Court is Lebanon County Defendants' motion

for summary judgment pursuant to Federal Rule of Civil Procedure 56 based on

their assertion that the force used was reasonable and necessary, did not go beyond

---

[1] Ash also named a "CO Slaughter" or "CO Slather" in the complaint.  This Defendant
will be dismissed pursuant to Federal Rule Civil Procedure 4(m) as the court has been unable to
serve this Defendant based on the information provided by Ash.

the force necessary to control a recalcitrant unrestrained Ash, and ceased when the

Ash was retrained.  (Doc. 25).  For the reasons that follow, the Defendants' motion

for summary judgment will be granted.

## I.      STANDARD OF REVIEW

Summary judgment is proper when viewing the evidence in the light most

favorable to the non–moving party, and drawing all inferences in favor of that

party, there is no genuine dispute over any material fact and the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *United States v.*

*Care Alternatives*, 952 F.3d 89, 95 (3d Cir. 2020).  However, in cases where

pertinent events are captured on video, courts should not rely merely on the

parties' characterization of the events but rather should view the facts as they are

depicted by the video.  *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

Consequently, when viewing the evidence in the light most favorable to a plaintiff

in an Eighth Amendment excessive force case, if no reasonable fact finder could

view the video of the incident and determine that the defendants acted maliciously

and sadistically, summary judgment is appropriate.  *Tindell v. Beard*, 351 F. App'x

591, 596 (3d Cir. 2009).

## II.    BACKGROUND

### A.    Relevant Procedural History

In October 2018, the Court granted Ash an enlargement of time to respond to Defendants' motion for summary judgment, cautioning that if he failed to file an opposition brief and properly supported response to Defendants' statement of undisputed material facts, the Court would deem Defendants' motion as unopposed.  (Doc. 31).  Although Ash did file a "motion to stop summury [sic] judgment," which the Court will construe as his opposition brief, he did not oppose or otherwise respond to their statement of undisputed facts.  (Doc. 32).  As such, they are deemed admitted.[2]  On December 11, 2019, Defendants' filed a reply brief in support of their summary judgment motion.  (Doc. 34).  The Defendants' motion for summary judgment is now ripe for disposition.

---

[2] Five months after Defendants' filed motion for summary judgment, Ash claimed he could not respond to the Defendants' statement of material facts because he never received it. *See* Doc. 38.  Yet, Ash does not explain why he failed to raise this omission earlier as Defendants' not only reference their statement of undisputed facts but also recited them in their supporting brief which Ash received.  *See* Doc. 26 at 2.  Additionally, even if Ash overlooked this detail in Defendants' brief, he fails to explain why he did not raise the issue in October 2019 when the Court specifically directed him to file a response to Defendants' statement of material facts.  Based on these facts, the Court will not excuse Ash's failure to file a response to Defendants' statement of undisputed material facts.   As such, the court deems admitted the facts submitted by the Defendants.  *See* Fed. R. Civ. P. 56(e); *see also* Pa. M.D. Local Rule 56.1.

## B.    Summary of Material Facts[3]

On the evening of March 30, 2016, Ash was sent to LCCF's medical unit to
receive his evening medication and treatment.  (Doc. 27 at ¶¶ 1–2).  Due to the
presence of another inmate, and his need for privacy while receiving treatment,
Ash was ordered to wait in the hallway outside of the medical unit.  (*Id.* at ¶ 3).
Ash became irate and began lodging obscenities toward the corrections officer
stationed in the medical department.  (*Id.* at ¶ 4).  After Ash told the officer to "go
f**ck yourself," the officer contacted Central Control and requested an officer
respond to the medical department to remove Ash from the area.  (*Id.* at ¶ 5, Doc.
27-1 at 3).

CO Smith and CO Fierro were stationed at Central Control and received the
request to report to the medical unit to remove Ash.  (Doc. 27 at ¶¶ 6–7).  CO
Smith responded to the call while CO Fierro remained in Central Control.  (*Id.* at ¶
8).  CO Smith arrived at the medical unit at approximately 8:19:38 p.m., opened
the door to the unit and waited briefly for Ash to exit the unit and enter the
hallway.  (Doc. 29, Video Surveillance ("Video") of March 30, 2016-incident,

---

[3] Defendants submit a DVD recording of the events of March 30, 2016 in support of their
motion for summary judgment.  The DVD contains two files; one showing the corridor to the
medical unit (CAM 15), and the other (CAM 16) shows the hallway in front of Central Control.
There is no audio track for either video clip.  The DVD is archived in the record at Doc. 29.

CAM 15).  From his location, CO Fierro was able to observe CO Smith lead Ash

by the arm from the medical unit without the use of restraints.  (Doc. 27 at ¶¶ 9–

10).

Ash became physically resistant and verbally disrespectful toward CO Smith

as he was being led down the hallway.  (*Id.* at ¶¶ 11–12).  Eight seconds into the

escort, CO Smith used a leading technique to escort Ash back toward Central

Control and his cell.  CO Smith placed his hand on Ash's arm.  Ash responded by

putting up his arms and pulling away from CO Smith.  (Doc. 29, Video CAM 15).

CO Fierro observed observe Ash starting to pull away from CO Smith and resist

the officer's attempts to lead him back to his cell block.  (Doc. 27 at ¶ 12).  At

8:19:47 p.m. CO Fierro left Central Control to assist CO Smith.  (*Id.* at ¶ 13; Doc.

29, Video CAM 16).

Due to Ash's increased hostility and resistance, CO Smith grabbed Ash by

the left arm and used his other arm to guide Ash to the right, placing him against

the wall outside of  Central Control.  (*Id.* at ¶ 14; Doc. 29, Video CAM 16).  Both

of Ash's arms were down at his side when CO Fierro arrived and placed Ash in

wrist restraints.  (*Id.* at ¶ 15; Doc. 29, Video CAM 16).  A third unidentified officer

approached CO Smith, CO Fierro, and Ash, but was not involved in subduing or

placing Ash in handcuffs.  (Doc. 29, Video CAM 16).  Once Ash was against the

wall and in restraints, he ceased acting in a defiant and resistant manner.  (*Id.* at ¶

16; Doc. 29, Video CAM 16).  Moments after Ash was handcuffed, CO Smith left

the area leaving CO Fierro and the unidentified officer to escort Ash to a housing

unit.  (*Id.*)  Less than one minute and thirty seconds elapsed between the time CO

Smith appeared at the medical unit to retrieve Ash, and when CO Fierro escorted

Ash to his housing unit.  (Doc. 29, Video, CAM 15 & CAM 16).

Once handcuffed behind his back, Ash began to complain of elbow and

shoulder pain which he attributed to an injury he sustained the previous year.

(Doc. 27 at ¶ 17).  Ash has a long history of shoulder complaints including a 2015

incident where he tore his left rotator cuff in a prison fight.  (Docs. 27 at ¶ 18, 27–4

at 1–14).  CO Smith states the force he employed against Ash was limited to the

use of joint manipulation and leading techniques.  (Doc. 27 at ¶ 20).  The only

force used by CO Fierro was placing restraints around Ash's wrists.  (Doc. 27–2 at

¶ 11).  Both CO Smith and CO Fierro affirm that the force used was reasonable and

necessary to regain control of a defiant and resistant inmate.  It was also the

minimal force necessary to gain Ash's compliance.  (*Id*. at ¶ 12; Doc. 27–3 at ¶¶

10–13).  Neither CO Smith nor CO Fierro intended to inflict pain upon Ash when

exerting the limited amount of force used to gain his compliance.  (*Id*. at ¶ 13; Doc.

27–3 at 14).  Although the facility's use of force continuum would have permitted

6

either officer to use OC spray or a physical takedown of Ash, CO Smith and CO Fierro elected not to use such force, and instead used the minimal amount of force necessary to secure Ash's compliance.[4]  (*Id*. at ¶ 24).

Following the incident, Ash was issued with a disciplinary misconduct for resisting staff and exhibiting gross disrespect to staff.  (*Id.* at ¶ 31, Doc. 27–1 at 3). At an April 5, 2016 disciplinary hearing, Ash plead guilty to disrespecting staff and was found guilty of resisting staff.  (Doc. 27–1 at 4).  The disciplinary board ordered Ash to serve thirty days in disciplinary confinement following the hearing. (*Id.*, Doc. 27 at ¶ 36).

## III.   DISCUSSION

### A.   Ash's Excessive Force Claim

When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 6 - 7 (1992).  To prevail on such a claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and, (2) "a sufficiently culpable state of mind" of the defendant official.  *Farmer v.*

---

[4]  Defendants assert that upon Ash's request, the Pennsylvania State Police ("PSP") investigated the March 30, 2016 incident.  (Doc. 27 at ¶¶ 29–30).  They refer the Court to Exhibit E, a copy of the PSP's report.  However, Exhibit E does not appear in the record.

*Brennan*, 511 U.S. 825, 834 (1994). An "Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).

In assessing a prisoner's claim of excessive force, a court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7 (internal citations omitted). To determine whether the force used was excessive, courts consider the following: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the extent of the inmate's injury; (4) the extent of the threat to safety "as reasonably perceived by responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Guided by these benchmarks, CO Smith and CO Fierro are entitled to summary judgment as to Ash's Eighth Amendment excessive force claim since the uncontested facts, which Ash does not dispute, plainly "refutes [Ash's] assertion that defendant[s] used excessive force." *Tindell v. Beard*, 351 F. App'x 591, 596 (3d Cir. 2000). Here, there is no material question of fact in dispute that Ash was verbally abusive toward staff, agitated, not in restraints, noncompliant, and

physically resistant to CO Smith as he was escorted from the medical department to his housing unit.  When Ash threw his hands up and pulled away from CO Smith, CO Smith used joint manipulation and guiding techniques to push Ash against the wall to be placed in restraints.  The only force CO Fierro used was limited to placing handcuffs on Ash.  The use of force event ceased once Ash was in handcuffs and compliantly walked with officers to the housing unit.  Ash does not dispute any of these facts.  Thus, there is no material question of fact in dispute that there was a need for CO Smith and CO Fierro to use force to regain control over Ash and place him in restraints.

Based on Defendants' uncontested affidavits, and the video of the use of force event, there is no disputed fact as to the amount of force used against Ash. The videos capture the entire event and highlights the brevity of each Defendants' physical contact with Ash.  The use of force depicted on the video was reasonable and appropriate in response to an increasingly defiant inmate not in restraints. Ash's opposition to the Defendants' motion for summary judgment is based strictly on the extent of his injury, a broken arm and chipped elbow.  He argues his injury speaks to the amount of force used during the incident.  (Doc. 32 at 2).  Based on the undisputed facts in this case, the Court does not agree.  As noted above, the "core judicial inquiry" in an Eighth Amendment use of force analysis is not

9

whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *see also Hudson*, 503 U.S. at 7.  An injury, while relative to the amount of force used, does not demonstrate the necessary subjective intent to succeed on an Eighth Amendment excessive force claim.  Ash does not point to any evidence in the record to support a finding that the Defendants acted maliciously or sadistically to cause him harm.  He does not contest the Defendants' expressed need to employ force in this matter, or that portions of the event were not captured on video, or that their use of force ceased immediately upon his restraint and compliance.  Given the totality of the circumstances and the undisputed record, the Court finds there was a justification for the use of some force by CO Smith and Fierro, and that the force used was reasonable under the circumstances, and the force used was not the type upon which a reasonable inference of malice and intent to cause pain could be based.  The Court holds that a reasonable jury could only conclude that CO Smith and CO Fierro applied reasonable force in a good–faith effort to maintain or restore discipline over a recalcitrant inmate, and not maliciously and sadistically for the very purpose of causing Ash harm.  *See Hudson*, 503 U.S. at 6–7; *Brooks*, 204 F.3d

at 106.  CO Smith and CO Fierro are entitled to summary judgment as to Ash's

excessive use of force claim against them.


### B.    State Law Claims of Assault and Battery

A district court may decline to exercise supplemental jurisdiction over a

claim when "the district court has dismissed all claims over which it has original

jurisdiction."  28 U.S.C. § 1367(c)(3); *see also Elkadrawy v. Vanguard Group,*

*Inc.*, 584 F.3d 169, 174 (3d Cir. 2009).  Because the Court is entering summary

judgment on Ash's sole federal claim, it will decline to exercise supplemental

jurisdiction over his remaining state law claims of assault and battery, and these

claims will be dismissed without prejudice.


## IV.   CONCLUSION

For the foregoing reasons, the Court grants Lebanon County Defendants'

motion for summary judgment, dismisses Ash's claims against Defendant

Slaughter pursuant to Fed. R. Civ. P. 4(m), and declines to exercise supplemental

jurisdiction over Ash's state law claims of assault and battery.